# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MEVA SMAJIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-cv-02474-SNLJ |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Meva Smajic's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Smajic now seeks judicial review. The Commissioner opposes the motion. With the issues being fully briefed, and for the reasons set forth, this Court **AFFIRMS** the Commissioner's decision.

## I.  Procedural History

Smajic's application was denied at the initial determination level.  She then appeared before an Administrative Law Judge ("ALJ").  The ALJ found Smajic is not disabled because she was not under a disability as that term is defined by the Social Security Act.  Smajic then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration.  The Appeals Council denied review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

*See* 20 C.F.R. § 404.981. Smajic now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II. Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to

do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the

3

Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. The ALJ's Decision

At Step One, the ALJ found Smajic met the insured status requirements through September 30, 2016, and had not engaged in substantial gainful activity since June 19, 2012. (Tr. 30). At Step Two, the ALJ found Smajic suffers from the following severe impairments: (1) depression; (2) anxiety; and (3) post-traumatic stress disorder. (Tr. 30).

At Step Three, the ALJ concluded Smajic does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 30).

Next, in beginning the analysis of Step Four, the ALJ determined Smajic's RFC. The ALJ found that Smajic

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she should never climb ropes, ladders or scaffolds. The claimant is limited to non-complex, non-detailed tasks; occasional changes in work setting; occasional to no direct interaction with public; occasional interaction with co-workers and supervisors; no work requiring regular communication in English and teaching by demonstration only.

(Tr. 32). As part of this determination, the ALJ found Smajic's allegations about her symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 35). While noting Smajic's claim of severe, debilitating migraines, the ALJ concluded the record did not support such a claim due to sporadic treatment, a positive medication response, unsupportive clinical findings (e.g. normal or near-normal CT scans), and unremarkable examinations by treating and consultative physicians. (Tr. 35). Regarding Smajic's depression, anxiety, and PTSD symptoms, the ALJ highlighted a mostly pedestrian record that exhibited overall conservative treatment that "never required inpatient psychiatric hospitalization or intensive outpatient treatment," with most indicators suggesting Smajic's symptoms were "troublesome" but not debilitating. (Tr. 35). The ALJ specifically referenced Smajic's "extensive daily activities" and functional capabilities, which includes a demonstrated ability to get along with family and friends, taking care of her two minor children,

5

relocating from New York to Missouri, cooking, cleaning, driving, shopping, and walking alone to the park. (Tr. 31-34). The ALJ also referenced Smajic's relatively mild treatment tempo (counseling once per month) and the unperturbed response of Smajic's treating physician, Dr. Farida Farzana, who only saw Smajic briefly during an initial interview and scheduled infrequent, two-month follow-ups thereafter. (Tr. 36). In fact, the ALJ emphasized that only Farzana ever reported "more severe mental limitations than found in [the designated RFC]." (Tr. 36). However, the ALJ gave "little weight" to Farzana's opinions because of the "overwhelming and contrary evidence of the record" and the inconsistencies between Farzana's opinions of "severe mental limitations" and her languid treatment protocols with Smajic. (Tr. 34, 36).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Smajic can perform his past relevant work given his designated RFC. The ALJ determined Smajic is capable of performing past relevant work as a janitor and a rolling machine operator. (Tr. 36).

Though not needing to reach Step Five, the ALJ nonetheless concluded "although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform." The ALJ noted that, when a claimant has non-exertional limitations, Section 204.00 in the Medical Vocational Guidelines (the "Grids") provide a helpful framework. Based on this framework, and the testimony of a vocational expert (VE) who opined that Smajic could perform work as a housekeeping cleaner, sorter, and cleaner (all of which have significant numbers in the national economy), the ALJ found Smajic was not disabled. (Tr. 38).

6

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

### A. The ALJ's Did Not Err When Deciding to Give "Little Weight" to the Opinions of Smajic's Treating Physician

Smajic first argues the ALJ erred when failing to give controlling weight to the opinions of Dr. Farida Farzana, one of Smajic's treating physicians. Farzana, who began

7

seeing Smajic in June 2014, provided the ALJ with a "medical source statement" (MSS) that reported profound physical, mental, and social limitations resulting from Smajic's depression and related symptoms, including anxiety and lethargy. Farzana attributed these symptoms to Smajic's "war experience[s]" in Bosnia (Smajic is a Bosnian refugee). The MSS utilized checkboxes for evaluating various physical, mental, and social capabilities, to which Farzana exclusively marked either "unable to meet competitive standards" or, worse, "no useful ability to function." In total, the MSS suggested Smajic has no meaningful ability to work as a result of her mental impairments. (Tr. 787-791, 924-928).

In the ALJ's opinion, the MSS "reported much more severe mental limitations than found in the [RFC] assessment," limitations that were "generally inconsistent with the overwhelming and contrary evidence of record[.]" (Tr. 36). For example, the ALJ pointed out that Farzana "provides no clinical support for such extreme mental limitations" and noted Farzana's lax follow-up tempo with Smajic (every two months on average) appeared inconsistent with the purported severity of Smajic's symptoms. It was also remarked that the record contained no "impatient psychiatric hospitalizations or intensive outpatient treatment." Accordingly, the ALJ assigned "little weight" to Farzana's opinions, having found them to be unsupported by the record in total. (Tr. 36).

Opinions of treating physicians ordinarily receive controlling weight if they are well-supported by the medical evidence and are "not inconsistent with other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for

doing so." *Walker v. Commissioner*, -- F.3d --, 2018 WL 6683397 at *2 (8th Cir. Dec. 20, 2018) (*quoting Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016)). "This requires the ALJ to explain in his written decision, with some specificity, why he has rejected the treating physician's opinion. Failure to do so is reversible error." *Walker*, 2018 WL 6683397 at *2 (citations omitted). Sufficiently good reasons "include internal inconsistency or that other physicians' opinions have better evidentiary support." *Id.*

The Eighth Circuit's recent opinion in *Walker* is instructive. In that case, the ALJ "failed to acknowledge [the treating physician's] opinion at all." *Id*. at *3. The treating physician, who recommended both bending and lifting limitations that were not adopted as part of the claimant's RFC, had notably based his opinions on objective clinical evidence—an MRI exhibiting degenerative disc disease. *Id*. at *2. Rather than rely on the treating physician, however, the ALJ instead relied on the opinions of a non-treating physician who had a more positive prognosis. *Id*. While mentioning the ALJ had some leeway to disbelieve the treating physician, the Eighth Circuit nonetheless reversed and remanded the case for further proceedings because the ALJ did not provide any reasons for discounting the treating physician's opinions. *Id*. at *3. In essence, the ALJ failed to show their work.

Here, by contrast, the ALJ did acknowledge Farana's opinions and specifically explained why they were being discounted: "Farzana's opinions contained in her [MSS] are generally inconsistent with the overwhelming and contrary evidence of record, including [her] own treatment records." (Tr. 36). The ALJ juxtaposed Farzana's aggressive conclusions (near-total inability to function) with her conservative treatment

efforts (mostly a bi-monthly or longer treatment tempo) and the lack of corroborating evidence (no inpatient psychiatric hospitalizations or intensive outpatient treatment and the contrary opinions of other physicians). Most telling to this Court is the fact that the limitations listed on the MSS "were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning." *Adkins v. Commissioner*, -- F.3d --, 2018 WL 6625772 at *3 (8th Cir. Dec. 19, 2018) (holding ALJ did not err in discounting treating physician's MSS when contrasted to said physician's treatment records that did not actually corroborate the checkbox conclusions of the MSS). Indeed, a review of Farzana's treatment records indicates Smajic's symptomology was largely situational (e.g. worrying over a son's ill-advised choices or the unexpected death of a spouse) and, again, the treatment tempo was notably conservative when compared to Farzana's opinions expressed in the MSS. Most of Farzana's records were simply terse summaries that in no way hint at or otherwise suggest the type of profound limitations set forth in the MSS. (Tr. 894-923). It is curious, then, that they materialized nearly two years after Farzana began treatment and only at the prompting of Smajic's attorney who asked Farzana to complete an MSS a few months prior to the administrative hearing. (Tr. 921).

It was not simply the apparent inconsistencies in Farzana's records, however. Dr. Payal R. Patel, Smajic's primary physician, noted in April 2015 that Smajic's symptoms were "stable and managed" and that her "activities of daily living are not difficult at all … due to the depression symptoms." (Tr. 815, 830). Patel further indicated in July 2015 that a depression screening resulted in "no significant symptoms." (Tr. 832). And Dr.

Gregory Fabiano's consultative examination was, likewise, mostly benign. Fabiano concluded "the results of the examination appear to be consistent with psychiatric problems, but in itself this does not appear to be significant enough to interfere with claimant's ability to function on a daily basis." (Tr. 376-378). Finally, the ALJ noted Smajic's daily activities: primary caretaker of two young children, the ability to do household chores, her ability to socialize with friends and family, and even her successful effort to relocate from New York to Missouri with her children—all of which suggested to the ALJ that Smajic's impairments were not as severe as alleged in the MSS. (Tr. 52, 196-198, 218, 377, 894).

This sort of contrary evidence relied on by the ALJ to discount Farzana's opinions has been upheld by the Eighth Circuit. *See Wagner v. Astrue*, 499 F.3d 842, 849-850 (8th Cir. 2007) (discounting treating physician opinion in favor of consultative opinions where treating physician's opinions were internally inconsistent); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (discounting treating physician's MSS favoring disability where physician's numerous treatment records never mentioned restrictions, because the physician's conclusions were not supported by objective testing or reasoning to indicate why restrictions were needed, and in light of other treating physician opinions indicating claimant's symptoms were being controlled); *Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999) (discounting treating physician opinion in light of contrary daily activities). And it is not this Court's function to re-evaluate the evidence for itself; rather, the Court need only determine whether the ALJ's conclusions are supported by substantial evidence. *See Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005). Because substantial evidence is

11

present in the record to support the ALJ's conclusions, the Court holds there was no error in discounting the opinions of Farzana.

B. **The ALJ's Did Not Err in Deciding Smajic's Headaches Were Not a "Severe Impairment"**

For Smajic's second point, she argues the ALJ erred when concluding the record failed to support migraine headaches as an additional severe physical impairment at Step Two. She points out that she testified at the administrative hearing that "she suffers from severe headaches once a week, and that they used to be more often." The ALJ discounted Smajic's subjective complaints, however, concluding "the record fails to support" her in light of myriad records suggesting infrequent symptoms, no limitations to physical activities, and normal object testing (e.g. CT scans).

A claimant's "[s]ubjective complaints may be discounted if the claimant's testimony is inconsistent with the evidence as a whole." *Nash v. Commissioner*, 907 F.3d 1086, 1090 (8th Cir. 2018). This "credibility determination [is] the province of the ALJ," the Court will not second-guess the ALJ "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." *Id*.

There is substantial evidence in the record to support the ALJ's decision to discount Smajic's migraine-related complaints. While Smajic articulates that she continues to suffer from debilitating migraine at least once a week, treatment records reflect otherwise—or, at minimum, demonstrate symptoms are not as severe as indicated. In June 2012, a CT scan of Smajic's head and cervical spine was benign—there were "no acute intracranial abnormalit[ies]." (Tr. 327). Likewise, follow-up CT scans in February

2013 were "essentially unremarkable." (Tr. 359-360). In May 2013, a neurological examination was performed by Dr. Hongbiao Liu who, while noting Smajic's subjective complaints of migraines with a "pain level [of] 10/10," ultimately concluded "the claimant has no limitation for routine activities." (Tr. 371-373). In June 2013, Smajic's neurologist, Dr. Steve Dofitas, reported that Smajic had not been experiencing migraines for more than a month after responding successfully to medication. (Tr. 380). Upon moving to St. Louis in early 2014, Smajic reported to her new primary care physician, Dr. Payal, that she was "currently not taking meds" for her migraines and was not experiencing them. (Tr. 644-645). And between April 2014 and February 2016, Smajic similarly denied having migraines and continued to express that she was not on medication for them. (Tr. 631, 795, 814, 820, 839, 876, 885, 888). Finally, there is no indication in the record that Smajic's migraines—even if they do continue to occur—present any sort of debilitating limitation.

Once again, the type of evidence relied upon by the ALJ to discount Smajic's subjective complaints has been upheld by the Eighth Circuit. *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (migraine headaches were not a severe impairment where record "is void of any diagnostic testing" confirming the frequency and severity alleged by claimant); *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (claimant's lack of complaints to treating physicians about disabling pain was a sufficient reason to discredit claimant's subjective complaints); *see also Price v. Colvin*, 2013 WL 3924360 at *8-9 (E.D. Mo. Jul. 29, 2013) (migraine headaches, even if they were a medically determinable impairment, were not considered a "severe impairment" where there was no

corroborating diagnostic testing and where medication was successful in treating them). It may be that Smajic suffers from migraines on occasion, but there is no evidence in the record to establish either their intensity or frequency at a level sufficient to be considered "severe" for disability purposes. *See* 20 C.F.R. 404.1520(c) (defining a "severe impairment" as one that "significantly limits [claimant's] physical or mental ability to do basic work activities"). Accordingly, the Court holds the ALJ did not err in refusing to find that Smajic's migraine headaches were a severe impairment.

## C. The ALJ's Credibility Determination of Smajic's Subjective Complaints

For her third point, Smajic argues "the ALJ did not mention or discuss the *Polaski* factors as required" in discrediting her subjective complaints. Smajic references the Eighth Circuit's opinion in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), in which the Eighth Circuit set forth five factors that a court must consider in determining whether subjective complaints were appropriately discounted as inconsistent with the total record. These five factors include: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id*. at 1322; see also 20 C.F.R. § 404.1529. Smajic argues the ALJ failed to address each of these factors.

But, in applying *Polaski*, the ALJ is not required to discuss each factor. Rather, he or she need only acknowledge and consider the factors generally before discounting a claimant's subjective complaints. *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017). As already mentioned, the ALJ expressly considered Smajic's daily activities, the lack of

functional limitations referenced by her treating physicians (notwithstanding Farana's otherwise unsubstantiated MSS), the effectiveness of medication (that Smajic later discontinued because symptoms resolved), the infrequency of her pain related to migraines, and the otherwise conservativeness treatment tempo related to depression and anxiety symptoms that suggested only a mild-to-moderate intensity. The ALJ also noted the lack of corroborative objective testing, which is another factor "to be considered in evaluating the credibility of the testimony and complaints." *Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 404.1529(a).

Having considered "numerous facts to assess [Smajic's] credibility" that elucidate the applicability of the various *Polaski* factors, the Court holds the ALJ did not err in discounting Smajic's subjective complaints. *Bryant*, 861 F.3d at 782. Whether or not each factor was expressly addressed to Smajic's satisfaction—something *Bryant* makes clear that *Polaski* does not require—a review of the ALJ's decision reveals the *Polaski* factors were, in fact, considered and addressed to the extent implicated by the record. And that is all that is required. The *Polaski* factors were never purposed to be a mechanism of disputatious effect, subjecting administrative decisions to reversal purely upon hyper-technical hairsplitting about whether a particular factor (or set of factors) was, or was not, addressed to the satisfaction of some opaque threshold. To the contrary, the north star of these proceedings has always been whether there exists "substantial evidence" for which to support the ALJ's decision. *Id*. at 782; *see also Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (stating "we defer to the ALJ's determinations regarding the credibility of witnesses so long as such determinations are supported by good reasons and substantial

evidence"). There is a myriad of evidence, evidence this Court will not reweigh for itself, contrary to Smajic's subjective complaints. The ALJ did not err in relying upon this evidence to discount those complaints.[1]

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 14th day of January 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

---

[1] To the extent Smajic is arguing the ALJ's decision never expressly mentions *Polaski* itself, the Court finds such an argument would, again, be hyper-technical and against the spirit and purpose of *Polaski*, which is to ensure the ALJ's decision is based upon substantial evidence. Whether or not the word "*Polaski*" was uttered anywhere in the decision seems a mere distraction from the true concern of whether or not the various *Polaski* factors were addressed, expressly or impliedly, by the ALJ in evaluating the record. In any event, the ALJ did expressly cite 20 C.F.R. § 404.1529, which essentially mirrors the *Polaski* factors; having done so, the "ALJ need not expressly cite the *Polaski* factors" themselves. *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017).